UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 1:17-cr-113-TRM-CHS |
| | ) | |
| ROBERT PENN | ) | |

# REPORT AND RECOMMENDATION

## I. Introduction

A grand jury indicted Robert Penn for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). [Doc. 1]. This charge arose after a loaded 9mm pistol was recovered from a motel room in which Penn was present. Penn filed a Motion to Suppress [Doc. 55] requesting that the Court suppress the evidence seized and statements made as a result of police officers' warrantless entry into the motel room. The undersigned conducted a hearing on the suppression motion on May 8, 2019. Penn and his attorney, Keith Davis, were present at the hearing. AUSA Kyle Wilson represented the Government.

The undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 55] be **DENIED** for reasons set forth below.

## II. Procedural History

Following his indictment, Defendant filed a suppression motion [Doc. 22] in February 2018. The undersigned conducted a hearing on that motion on March 28, 2019 [Doc. 29]. During the hearing, Penn's then-attorney, Gianna Maio, discovered that she had overlooked the existence of a body-cam video maintained by one of the officers. At defense counsel's request, the Court postponed the suppression hearing to allow her to review and analyze the body-cam footage.

After reviewing the video footage, Defendant moved to strike his suppression motion. [Doc. 32]. The Court granted that motion. [Doc. 33]. The undersigned conducted Defendant's re-arraignment on May 8, 2018, and entered a report and recommendation memorializing Defendant's plea of guilty to Count 1 of the Indictment. [Doc. 37]. The District Judge entered an order adopting the undersigned's report and recommendation on May 30, 2018. [Doc. 38].

Shortly before the date for Defendant's sentencing hearing, his attorney, Ms. Maio, filed a Motion to Request a Hearing Regarding Attorney Representation. [Doc. 41]. The undersigned conducted a hearing on that motion, relieved Ms. Maio from further representation, and appointed Attorney Keith Davis to represent Defendant. [Doc. 45]. Defendant filed a motion to withdraw his guilty plea [Docs. 47, 49], which the District Judge granted by order dated February 14, 2019. [Doc. 53].

After withdrawing his guilty plea, Defendant renewed his Motion to Suppress on March 25, 2019 [Doc. 55]. Before briefing was complete, Defendant sent a letter to the Court, complaining of "ineffective assistance of counsel." [Doc. 57]. The letter prompted Defendant's current attorney, Keith Davis, to file a Motion to Determine Status of Attorney Representation. [Doc. 58]. The undersigned conducted a hearing on the motion and denied Defendant's request for new counsel. [Doc. 64]. The Court then held a hearing on the motion to suppress. [Doc. 68].

**III.   Facts**

The following chain of events led to the discovery of a firearm in Defendant's possession in a motel room in East Ridge, Tennessee. Initially, a red Ford Focus was stolen from a gas station in Chattanooga. The Chattanooga Police Department broadcasted a message to officers to be on the lookout for the stolen vehicle. Around 9:00 A.M. on the following morning, two East Ridge police officers noticed a red Ford Focus—matching the description of the stolen car—parked

outside Room 141 at a local Motel 6. The motel was known to the police as a particularly high-crime location in a high-crime area. Officers ran a search of the car's registration and confirmed that it was the stolen Ford Focus.

The officers entered the motel lobby and interviewed the motel clerk at the reception desk. The clerk advised them that a motel guest by the name of Trevor Casteel had arrived in the red Ford and rented Room 141. The clerk provided them with a copy of Casteel's identification and told officers that Casteel checked in by himself at around 2:00 A.M., but paid an additional fee for a guest. The clerk further advised the officers that, per Motel 6 policy, local residents staying at the motel were required to provide photo identification for themselves as well as for any guests staying in the room with them.

The police officers returned to their cruiser and ran a background check on Trevor Casteel. They discovered that Casteel was a convicted felon and that he was currently on probation.[1] Armed with this information—and because Casteel had arrived in a stolen car which was parked outside his room—the police officers knocked on the door to Room 141 and announced their presence. Adjacent to the door was a window with the blinds drawn. The police saw a man peek through the blinds. After approximately one minute had elapsed, a young woman, later identified as Sarah Croy, opened the door. When Croy opened the door, officers could see Casteel, partially covered by one or more blankets, lying on one of the beds. They also observed another man, later identified as Robert Penn, dart quickly into the bathroom at the rear of the motel room.

Concerned for their safety, the officers immediately entered the hotel room and ordered Penn out of the bathroom. Penn complied. The officers then conducted a protective sweep of the room; detained Penn, Casteel, and Croy; and read them their *Miranda* rights. Upon questioning by

---

[1] The police later determined that, although Casteel was a convicted felon, the information concerning his probationary status was erroneous.

3
Case 1:17-cr-00113-TRM-CHS  Document 72  Filed 09/03/19  Page 3 of 15  PageID #: 604

the police officers, Casteel admitted to arriving in the stolen car, although he indicated that his girlfriend was the driver.[2] When officers asked if there were any weapons in the room, both Penn and Casteel denied it.

Officers asked Casteel—the only registered occupant of the room—for consent to search the room. Casteel provided consent to the officers to search the motel room. When the officers searched the bathroom, they found a loaded 9mm pistol with a towel wrapped around it. In a later interview, Penn admitted that he possessed the gun. More specifically, Penn said that he planned to buy the firearm from Croy and that he handled and examined it as he was deciding whether to purchase it. Penn stated that, although he did not have enough money at the time to buy the gun, he intended to get the money to purchase it. Penn stated that he came to the motel not only to examine the firearm but also to "turn up, smoke, and chill" with friends.

At the time of the search, Penn was on probation. As part of his probation order, Penn agreed to a warrantless search of his "person, vehicle, property, or place of residence by a Probation/Parole Officer or law enforcement officer, at any time." Penn's probation officer, Andrew Gavin, testified at a hearing that he told Penn that, under this provision, a motel room would be equivalent to a "place of residence" for purposes of consenting to a warrantless search.

In the present motion to suppress, Penn requests that the Court suppress all evidence obtained from the warrantless search of the motel room, as well as his later admissions to the police. In response, the Government argues that Penn did not have a constitutionally-protected expectation of privacy in the motel room because he was not an overnight guest in the room, and further, he was on probation at the time and was under a condition that required him to consent to warrantless searches by law enforcement. The Government also asserts that the officers' entry in

---

[2] Casteel's girlfriend was not present when the police officers entered the motel room.

the motel room was a permissible protective sweep and that the ensuing search was permissible because Casteel—the registered occupant of the room—provided consent. And, although the Government maintains that the search was constitutionally sound, it also argues that—even if the search were found to be constitutionally impermissible—suppression of evidence would not be necessary because the officers acted in good faith.

## IV. Discussion

### A. Overview

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. This right restrains the power of law enforcement officers to conduct searches of places in which a person has a "legitimate expectation of privacy." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)). But to have standing[3] to contest a search under the Fourth Amendment, defendants must show, by a preponderance of the evidence, that "[they] had a legitimate expectation of privacy in the area searched or items seized." *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013) *United States v. Ponder*, 240 F. App'x 17, 19 (6th Cir. 2007)). To establish such an expectation, defendants must demonstrate that: (1) they had a subjective expectation of privacy; and (2) their expectation was objectively reasonable. *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009). An expectation is objectively reasonable only when it is one that society is prepared to recognize as legitimate. *Id.* at 283. Courts determine whether a legitimate expectation of privacy exists in a particular place or thing on a case-by-case

---

[3] To the extent the Court references Defendant's "standing," it is not "standing" in the sense of being jurisdictional or rooted in Article III but instead "is more properly subsumed under substantive Fourth Amendment doctrine." *Rakas v. Illinois*, 439 U.S. 128, 139 (1978). "In other words, for a defendant to argue successfully that evidence should be suppressed, he must show, as an element of his claim, that the government infringed upon his Fourth Amendment rights." *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014). The term "standing" as used herein refers to the existence (or lack thereof) of personal Fourth Amendment rights in the locations searched—meaning the existence (or non-existence) of an objectively reasonable expectation of privacy that Defendant has in a respective location.

basis upon the totality of the circumstances. *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005); *Jones v. Lewis*, 874 F.2d 1125, 1131-32 (6th Cir. 1989).

### B. Penn had no Reasonable Expectation of Privacy

The question presented is whether Penn was entitled to a reasonable expectation of privacy in the motel room where he was a visitor. "[A] person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *United States v. Haynes*, 108 Fed.App'x. 372, 374 (6th Cir. 2004) (quoting *Rakas*, 439 U.S. at 134). Therefore, an occupant of a hotel room has a reasonable expectation of privacy, even though he is just a guest, not an owner, of the room. *Stoner v. California*, 376 U.S. 483, 490 (1964); *Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990). *See also United States v. Caldwell*, 518 F.3d 426, 429 (6th Cir. 2008). Courts recognize that "[o]vernight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property on which they are staying." *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). But non-registered occupants who are in the room for a limited period in pursuit of a commercial transaction, such as distributing illegal drugs, do not have a reasonable expectation of privacy in the room. *See Minnesota v. Carter*, 525 U.S. 83, 91 (1998).

To be entitled to Fourth Amendment protection, an overnight guest must show that he had a reasonable expectation of privacy in the particular place; that is, he must have "(1) . . . a subjective expectation of privacy, and (2) . . . [show that his] expectation was objectively reasonable." *Washington*, 573 F.3d at 282. Although there is no "single metric or exhaustive list of considerations" to use when determining whether a person has a subjective and objectively reasonable expectation of privacy, *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018), courts have often considered a variety of factors, including whether the person has (i) a "proprietary or

6

possessory interest in the place to be searched or item to be seized"; (ii) "the right to exclude others from the place in question"; (iii) "taken normal precautions to maintain his privacy"; and (iv) "exhibited a subjective expectation that the area would remain free from governmental intrusion," *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) (quoting *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005)). "The Sixth Circuit has generously construed the Fourth Amendment as protecting nearly all overnight guests," *Washington*, 573 F.3d at 283, whether they are "renters, couch surfers, or nomads," *Allen*, 720 F. App'x at 257.

In *Minnesota v. Olson*, 495 U.S. 91, 96-99 (1990), the Supreme Court held that overnight status alone is sufficient to demonstrate that a defendant has a legitimate expectation of privacy in the home of another; but, in *Minnesota v. Carter*, 525 U.S. 83, 89 (1998), the Court clarified *Olson*. In *Carter*, the persons seeking the protection of the Fourth Amendment were present in the home searched, not as overnight guests, but for "a matter of hours" to conduct a drug transaction. *Id.* at 90. They had no previous relationship with the householder, and no other purpose for the visit existed. *Id.* For those visitors, the home was "simply a place to do business." *Id.* The Court recognized that, for Fourth Amendment purposes, property used for commercial purposes is treated differently—and accorded less protection—than property used as a residence. *Id.*

The Court stated that if the overnight guest in *Olson* was an example of one who may claim the protection of the Fourth Amendment in the home of another and a person who is merely "legitimately on the premises" is one who may not claim the protection of the Fourth Amendment, then *Carter* was somewhere in between. *Id.* The Court found that "the purely commercial nature of the transaction engaged . . . the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder . . . [led to the conclusion] that

7

respondents' situation is closer to that of one simply permitted on the premises" and, therefore, the visitors had no legitimate expectation of privacy in the premises. *Id.* at 91.

With *Carter* at one end of the spectrum and *Olson* at the other, Penn's situation more closely aligns with the facts in *Carter*—Penn was a transient party guest conducting illegal commercial activity. More specifically, Casteel was the sole person who registered and paid for the motel room. When he checked in at 2:00 A.M., Casteel identified himself as the registered guest in the room but also indicated that one other adult—presumably his girlfriend who had arrived at the motel with Casteel—would be staying in the room with him. Penn was not registered as a guest when Casteel checked in, nor did Penn ever register as a guest even though motel policy required it.[4] Penn did not pay any portion of the bill for the motel stay. *Cf. United States v. Kitchens*, 114 F.3d 29, 32 (4th Cir. 1997). Penn was there for a limited time and did not have the right to exclude others from the room. *See, e.g.*, *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988) (holding that a defendant did not have standing because he did not present evidence showing that he had a right to exclude others from the apartment and did not show that he took precautions to ensure his privacy in any area of the residence). It is unclear precisely when Penn arrived at Room 141, but it had to be sometime between 2:00 A.M. (when Casteel checked in) and 9:00 A.M. (when the officers arrived). While Penn may have slept in the room, that alone is not

---

[4] *See, e.g.*, *United States v. Robertson*, 297 F. App'x 722, 726 (10th Cir. 2008) (holding that a defendant had no reasonable expectation of privacy when the hotel room was not registered in his name and "no personal items indicating an overnight stay were present"); *United States v. Deninno*, 29 F.3d 572, 576 (10th Cir. 1994) (holding that motel room was registered to another person, and because defendant did not dispute these facts in his motion to suppress, he did not have standing to object to the search); *United States v. Cook*, Case No. 08–2295, 2009 WL 2952144, at *3 (10th Cir. Sept.16, 2009) (noting that defendant did not have standing to object to the search of the motel room because he was not an overnight guest or a joint occupant: the room was not rented to him and he was not staying overnight; even if he was an invitee of the person who rented the room, his privacy rights were not "equal to that of the motel's actual guests"); *see also United States v. Irizarry*, 673 F.2d 554, 556 (1st Cir. 1982) ("The hotel room here was registered to [Defendant 1 but Defendant 2], however, offered no evidence of any personal interest in the room beyond his being 'merely present.'")*.*); *United States v. WaiKeung*, 845 F.Supp. 1548, 1562 (S.D. Fla. 1994) ("Mere presence in a hotel room registered to another does not establish the requisite expectation of privacy. . . .).

enough to be an "overnight guest." *See United States v. Aiken*, 877 F.3d 451, 456-57 (1st Cir. 2017) ("it is not reasonable for this Court to assume that sleeping in a hotel room, for more than a brief period of time, means that Aiken was an overnight guest as envisioned by the Supreme Court in *Olson*."). Penn did not establish that he possessed any of the items that would be expected of an overnight guest. *See United States v. Berryhill*, 352 F.3d 315, 317 (6th Cir. 2003) (rejecting defendant's argument that he was an overnight guest because he "lacked any of the items one would expect an overnight guest to have with him. He carried no clothes or toothbrush . . . "). In his post-arrest interview, Penn stated that Croy invited other men to the motel room before Penn arrived, which created a conflict between him and Croy. Penn also explained that his purpose in going to the room was to hang out with friends—specifically to "turn up, smoke, and chill"—and, significantly, to buy a firearm from Croy.

Penn's dual purposes for being in the room were to smoke marijuana with some acquaintances and purchase a firearm illegally. These activities do not clothe Penn with a protected privacy interest in Room 141. *See Harris*, 255 F.3d at 294–95 ("Although an overnight guest may possess a legitimate expectation of privacy . . . , a temporary visitor to a residence may claim no such protection. This is particularly true where, as here, the person seeking the protections of the Fourth Amendment was on the premises for the sole purpose of engaging in [illegal] business transactions."). While Penn may have had a subjective interest in the room, it was not an objectively reasonable one "rooted in [an] 'understanding that [is] recognized and permitted by society.'" *Olson*, 495 U.S. at 100 (quoting *Rakas*, 439 U.S. at 144 n.12).

Even discounting the illegal-gun transaction, Penn's stated objective that he came to the motel room to hang out with friends and "turn up, smoke, and chill," places him in the category of a casual visitor or party guest, clearly lacking standing to challenge a Fourth Amendment search.

*See, e.g.*, *United States v. Maddox*, 944 F.2d 1223, 1234 (6th Cir. 1991) (holding that a "purely transient party guest" had no reasonable expectation of privacy in his host's home); *United States v. Grandstaff*, 813 F.2d 1353, 1357 (9th Cir. 1987) (holding that "mere presence in the hotel room of another is not enough" to establish a legitimate expectation of privacy in one's surroundings); *United States v. Adamo*, 742 F.2d 927, 947 (6th Cir. 1984), cert. denied, 469 U.S. 1193, 105 (1985) (party guest lacked a reasonable expectation of privacy in host's home); *see also United States v. Bushay*, 859 F. Supp. 2d 1335, 1349 (N.D. Ga. 2012) ("Bushay did not show that he had an unrestricted right of occupancy or custody and control of the room as distinguished from occasional presence in the room as a mere guest or invitee.").

Penn's inability to claim overnight-guest status is also consistent with decisions reached by other courts in cases with analogous factual situations. In *United States v. Flores*, 172 F.3d 695 (9th Cir.1999), the Ninth Circuit applied *Carter* and concluded that the defendant did not have a legitimate privacy interest in an apartment because he had been there for only a short period to conduct a drug transaction. In *United States v. Gordon*, 168 F.3d 1222 (10th Cir. 1999), the Tenth Circuit also applied *Carter* to conclude that the defendant did not have a reasonable privacy interest in a motel room that had been rented by another because he had been there only short period to engage in drug trafficking. The *Gordon* court held that the defendant was more similar to someone merely on the premises, who does not have a legitimate expectation of privacy, rather than an overnight guest who has such an expectation. *Id.* at 1227.

The Court finds that Penn had no constitutionally-protected privacy right in the motel room and that he lacks standing to contest the search of that room. For this and other reasons set forth herein, Penn's Motion to Suppress [Doc. 55] should be **DENIED**.

### C. Permissible Exceptions to a Warrantless Search

Even if Penn possessed standing to contest the search of the motel room, the search would still be valid. While the search of the motel room was conducted without a search warrant, there are established exceptions to the Fourth Amendment prohibition against warrantless searches. Two of those established exceptions are present in this case, *to wit*: (1) protective sweeps; and (2) searches based upon consent. Because all warrantless searches are presumptively unreasonable, the government bears the burden of proving that one of the valid exceptions applies whenever a warrantless search is conducted. *See United States v. Jeffers*, 342 U.S. 48, 72 (1951) ("[T]he burden is on those seeking the [warrant] exemption to show the need for it . . . .").

#### 1. Protective Sweep Exception to Warrantless Search

In this case, when the police officers knocked on the door of Room 141 at the East Ridge Motel 6 and entered the room, they initially conducted a protective sweep. "[A] protective sweep is permissible when after placing a suspect under arrest, officers have a reasonable fear, based upon specific and articulable facts, that the area to be swept may harbor an individual or individuals who present a threat to officer safety." *United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990)). And, a protective sweep is not limited to circumstances in which suspects are placed under arrest. The Sixth Circuit expressly permits officers to conduct a protective sweep of premises in cases where officers need to secure such premises while obtaining a search warrant. *United States v. Taylor*, 248 F.3d 506 (6th Cir. 2001). Protective sweeps are also allowed to ensure the safety of officers, emergency medical technicians, and all parties located within a home responding to a medical emergency. *Stricker v. Township of Cambridge*, 710 F.3d 350, 363 (6th Cir.2013) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir.2003) (upholding as objectively reasonable officer's entry and subsequent protective

11
Case 1:17-cr-00113-TRM-CHS   Document 72   Filed 09/03/19   Page 11 of 15
PageID #: 612

sweep to determine "whether anything or anyone in plaintiff's home posed a risk of danger either to themselves or to the paramedics who sought to enter the home to attend to the injured, or, alternatively, to someone inside the home")). The Sixth Circuit has further applied these principles for protective sweeps to motel and hotel rooms. *See, e.g.*, *United States v. Biggs*, 70 F.3d 913, 916 (6th Cir. 1995) (protective sweep of motel room was permissible based on concerns that the officers had received information that another person may be meeting the defendant at the motel, despite the fact that the officers arrested defendant outside of the room at his truck); *United States v. Beasley*, 199 F. App'x 418, 422–23 (6th Cir. 2006) (finding that 15-second protective sweep of hotel room was justified to "make sure other armed persons were not hiding behind beds or in the bathroom area," even though the defendant had been arrested in the parking lot outside).

Police officers are justified in performing two different types of protective sweeps depending on the situation:

> The first type allows officers to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334, 110 S.Ct. 1093. The second type of sweep goes "beyond" immediately adjoining areas but is confined to "such a protective sweep, aimed at protecting the arresting officers[.]" *Id.* at 334–35, 110 S.Ct. 1093. The first type of sweep requires no probable cause or reasonable suspicion, while the second requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334, 110 S.Ct. 1093.

*United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009).

Here, the Court finds that the protective sweep of Room 141 was warranted under the more-stringent, "articulable facts" standard. The Motel 6 where officers searched was in a high-crime area and was itself a high-crime location known to police for gun possession, stolen vehicles, and narcotic sales. *Smith*, 633 F.3d at 893–94 (quoting *Wardlow*, 528 U.S. at 124) (noting that police officers "may take into account the context in which suspicious activity occurs 'in determining

whether the circumstances are sufficiently suspicious to warrant further investigation.'"). Before knocking on the door of Room 141, police knew that the Ford Focus was stolen; Trevor Casteel had arrived in the stolen car; he was staying in Room 141; and he was a convicted felon. After police knocked on the door, a man peeked through the blinds but did not open the door. Nearly a minute went by before Croy opened the door. This delay heightened officers' safety concerns since the occupants of the motel room could have been arming themselves. And, when Croy did open the door, officers saw Casteel partially obscured by a blanket and Penn ducking down and darting into the bathroom where he was no longer visible to them.

Collectively, these events gave rise to a suspicion of criminal activity or threat to officer safety and provided justification for entering the room and conducting a protective sweep. *See United States v. Craver*, No. 3:09-cr-139, 2010 WL 2303253, at *7 (S.D. Ohio. June 7, 2010) ("[A]n individual's conduct in . . . hiding or ducking down, can assist in establishing reasonable suspicion that he or she is armed"). Officers ordered Penn out of the bathroom, secured the three occupants of the room, and conducted a quick visual inspection of the motel room and bathroom. *E.g., Beasley*, 199 F. App'x at 422–23 (upholding a protective sweep of a hotel room to "make sure other armed persons were not hiding behind beds or in the bathroom area[.]").

The police officers limited the protective sweep to the immediate area contiguous to the motel room itself. This is the type of sweep that *Buie* allows even without requiring justification from police. *See United States v. Kaler*, 11 F.App'x 400, 402 (6th Cir. 2001) (finding that officers' actions were constitutional, without either probable cause or reasonable suspicion, in not only searching the bathroom immediately adjoining the space of arrest but also by pulling back the shower curtain to look in the bathtub.); *see also United States v. Thomas*, 429 F.3d 282, 287–88 (D.C. Cir. 2005) ("If an apartment is small enough that all of it immediately adjoin[s] the place of

arrest and all of it constitutes a space or spaces from which an attack could be immediately launched, then the entire apartment is subject to a limited sweep of spaces where a person may be found.") (internal quotations omitted).

The Court finds that law enforcement officers were justified in conducting a protective sweep of Room 141 of the Motel 6. The protective sweep is significant—not because the officers found any evidence during the sweep that Penn seeks to suppress—but rather because it formed the basis for the officers' decision to enter the motel room. Once they had accomplished the protective sweep, they read *Miranda* rights to Casteel, Croy, and Penn. Casteel consented to a search of the room, the gun was found, and Penn admitted to possessing the weapon.

For the reasons set forth herein, the protective sweep was merited under the circumstances, and Penn's Motion to Suppress [Doc. 55] should be **DENIED**.

### 2. Consent Exception to Warrantless Search

It is uncontroverted that, after Trevor Casteel was given his *Miranda* rights, he provided consent for the officers to search Room 141 of the Motel 6. Penn does not contend that Trevor Casteel lacked authority to provide consent for officers to search the motel room. Indeed, there is no basis for him to contest Casteel's right to give consent. *See Olson*, 495 U.S. 91, 99 (1990) (holding that a guest may not complain when his privacy is disturbed by "his host and those his host allows inside[.]"); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (a search conducted via a valid consent is an exception to the Fourth Amendment's warrant and probable cause requirements).

Instead, Penn argues that Casteel's consent, as well as his later statements to law enforcement officers, constitute poisonous byproduct of the officers' unlawful entry into the motel room. The Courts finds that there is no basis for this argument. The officers had probable cause to

14
Case 1:17-cr-00113-TRM-CHS    Document 72    Filed 09/03/19    Page 14 of 15
PageID #: 615

enter the motel room to effect the arrest Trevor Casteel who had arrived in a stolen Ford Focus which was parked immediately outside the hotel room registered in his name. When the officers knocked on the door, an aggregation of suspicious events—detailed above—gave them sufficient reason to conduct a protective sweep of the room for their safety. And, after Casteel was given his *Miranda* rights, he gave consent for officers to search the room. The officers' entry into the motel room was legal. And Casteel's consent allowed them to conduct the warrantless search, which led to the discovery of the firearm that Defendant Penn is charged with possessing.

The Court finds that Trevor Casteel gave consent to search the motel room, and that his consent authorized law enforcement officers to conduct the search which led to the discovery of the firearm which forms the basis of the criminal charge against Defendant Penn. For this and other reasons set forth herein, Penn's Motion to Suppress [Doc. 55] should be **DENIED**.[5]

## V. Conclusion

For the reasons set forth above, the Court **RECOMMENDS** that Defendant Penn's Motion to Suppress [Doc. 55] be **DENIED**.[6]

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[5] Though the parties briefed an issue regarding whether a condition in Penn's probation agreement permitted law enforcement to search the motel room, this argument need not be addressed since the Court finds that the search was constitutionally permissible for other reasons.

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).