UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 1:17-cr-113 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| ROBERT PENN | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| | ) | |

## MEMORANDUM AND ORDER

On March 25, 2019, Defendant Robert Penn filed a motion to suppress all evidence seized by officers during their search of a motel room where he was present and the statement Penn made to law enforcement subsequent to his arrest (Doc. 55). The Government responded in opposition (Doc. 65), and United States Magistrate Judge Christopher H. Steger held a hearing on the motion on May 8, 2019. (Doc. 71.) On July 11, 2019, Magistrate Judge Christopher H. Steger filed a Report and Recommendation (Doc. 72) pursuant to 28 U.S.C. § 636(b)(1). In his Report and Recommendation, Magistrate Judge Steger recommended that Penn's motion to suppress (Doc. 55) be denied. (Doc. 72.) Penn timely objected. (Doc. 76.) For the reasons set forth below, the Court will **ACCEPT** and **ADOPT IN PART** the report and recommendation (Doc. 72) and will **DENY** Penn's motion to suppress (Doc. 55).

I.   **STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The

magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is, therefore, entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

Although the Court is required to engage in a *de novo* review of specific objections, if the objections merely restate the arguments asserted in a defendant's earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.*

**II.     BACKGROUND**

On July 25, 2017, a grand jury indicted Penn on the charge of possessing a firearm while a felon, in violation of Title 18, United States Code, Section 922(g). (Doc. 1.) On February 12, 2018, Penn filed a motion to suppress through his first court-appointed attorney. (Doc. 22.) During the hearing on that motion to suppress, Penn and his counsel saw body-camera video they had not previously seen, leading Penn to move to strike his motion to suppress. (Doc. 32.) Magistrate Judge Steger granted Penn's motion to strike, and the Court accepted his guilty plea on May 30, 2018. (Doc. 38.)

However, Penn expressed frustration with his attorney when she met with him regarding presentencing issues, and she eventually requested a hearing regarding attorney representation on

his behalf a few days before the scheduled sentencing hearing.  (Docs. 41–43.)  Magistrate Judge Steger relieved Penn's first attorney from further representation and appointed his current attorney on September 24, 2018.  (Doc. 45.)  The Court then granted Penn's motion to withdraw his guilty plea.  (Doc. 53.)

On March 25, 2019, Penn filed a second motion to suppress all evidence seized by officers during their search of Motel 6, Room 141, and the statement Penn made to law enforcement subsequent to his arrest.  (Doc. 55.)  Penn argued that:  (1) "[t]here is sufficient evidence to show that [he] had a reasonable expectation of privacy in the motel room"; (2) "[t]here is no evidence which establishes that the officers' entry into the motel room was for the purpose of securing their safety"; (3) "[t]he consent to search the motel room which law enforcement eventually obtained from Trevor Casteel was a product of their unlawful entry into the motel room"; (4) "[t]he officers [sic] entry into the motel room was not reasonable despite the fact that Defendant PENN was on probation at the time"; (5) "[t]he application of the exclusionary rule is appropriate in this case"; and (6) "[a]ll of the evidence obtained as the result of the officers' warrantless entry into the motel room must be excluded"—including the pistol and his subsequent statement to law enforcement.  (Doc. 56, at 7–20.)

On May 8, 2019, Magistrate Judge Steger held an evidentiary hearing on Penn's second motion to suppress.  (Doc. 71.)  At the evidentiary hearing, Magistrate Judge Steger explained that he would consider the evidence from the hearing on Penn's first motion to suppress, which included testimony from Officer Lauren Whittenburg of the East Ridge Police Department, ATF Agent Scott Musgrave, and Probation Officer Andrew Gavin.  (Doc. 30.)  Exhibits included a Tennessee Department of Corrections Probation Order, video footage from a body camera, and video footage from a post-arrest interview with Penn.  (*Id.*)  At the second hearing, Magistrate

3

Judge Steger heard additional testimony from Officer Lauren Whittenburg. (*Id.*)

Penn did not object to the facts outlined in Magistrate Judge Steger's report and recommendation, but he did object to the findings and legal conclusions related to those facts. (*See generally* Doc. 76.) After reviewing the record and finding the facts to be consistent with Magistrate Judge Steger's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the report and recommendation. (Doc. 72, at 2–4); *see, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). The Court will refer to the facts only as necessary to analyze the issues raised on objection. Penn's objections to Magistrate Judge Steger's report and recommendation are now ripe for review.

III. ANALYSIS

Penn argues that the magistrate judge erred in finding that the search of the hotel room was constitutionally permissible. (Doc. 76, at 7.) Specifically, Penn contends that Magistrate Judge Steger erred in determining that: (1) Penn did not meet his burden of establishing "that he was an overnight guest of the motel which would lead to his having a legitimate expectation of privacy in the hotel room"; (2) the officers' warrantless entry into the motel room was necessary to ensure officer safety; and (3) the officers had consent to search the room. (*Id.*) The Court will address Penn's first objection first, as Penn's motion to suppress fails if he has not established that he had a reasonable expectation of privacy in the motel room.

Under the Fourth Amendment, "a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." *Stoner v. California*, 376 U.S. 483, 490 (1964). But a guest only has standing to challenge a warrantless search of a hotel room if he can show both a subjective expectation of privacy in the room and that the expectation is "one that society is prepared to recognize as reasonable." *United States v. Lanier*, 636 F.3d 228, 231 (6th

Cir. 2011) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)); *see also United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)) ("Because Fourth Amendment rights are 'personal,' the central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized."). A defendant has the burden of establishing this legitimate expectation of privacy. *See United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014); *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009). In determining whether an individual has a legitimate expectation of privacy in a particular place, courts in the Sixth Circuit generally consider the individual's proprietary or possessory interest in the searched location; whether he had the right to exclude others from that location; whether he had taken normal precautions to maintain his privacy; whether he exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises. *United States v. Waller*, 426 F.3d 838, 843 (quoting *King*, 227 F.3d at 744).

In *Minnesota v. Olson*, 495 U.S. 91 (1990), the United States Supreme Court recognized that an "overnight guest has a legitimate expectation of privacy in his host's home . . . ." *Id.* at 98. The court explicitly recognized that society recognizes that hotel guests, in addition to houseguests, have a legitimate expectation of privacy as overnight guests:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.

5

> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend. Society expects at least as much privacy in these places as in a telephone booth—"a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable," *Katz* [*v. United States*, 389 U.S. 347, 361 (1967)] (Harlan, J., concurring).

495 U.S. at 98–99. The Supreme Court later clarified in that, while "an overnight guest in a home may claim the protection of the Fourth Amendment, . . . one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). In *Minnesota v. Carter*, visitors who had no previous relationship with the occupant of the home and were there only "a matter of hours" for the sole purpose of a business transaction rather than any social purpose could not challenge a search of the home. 525 U.S. at 90–91.

Thus, determining whether a defendant has standing to challenge a search often turns on whether he fits within *Olson* and *Carter*'s "overnight guest" category. *See, e.g.*, *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) ("[T]his court has broadly interpreted the Fourth Amendment to protect nearly all overnight guests . . . . People—whether renters, couch surfers, or nomads—have a reasonable expectation of privacy in places that function as a home.") In *United States v. Berryhill*, 352 F.3d 315 (6th Cir. 2013), the Sixth Circuit affirmed a district court's determination that the defendant had no legitimate expectation of privacy when he had been invited to the searched apartment by a friend who was himself a guest in the apartment and did not plan to stay overnight. *Id.* at 316–17. Although his friend testified that they had intended to stay overnight, the district court had found that the defendant had no such plan, in part because he had no items with him that would indicate he planned to stay overnight, such as a change of clothes or a toothbrush. *Id.* at 317. The district court based its determination that the defendant

6

lacked a reasonable expectation of privacy in the apartment on two grounds: "first, that [the defendant] did not intend to stay at the apartment overnight, and second, that he unreasonably relied upon a guest's invitation to enter the apartment given without the direct or indirect knowledge of the lawful tenant or owner." *Id.* at 316–17. Both of the *Berryhill* court's reasons apply here and support Magistrate Judge Steger's determination that Penn was not an overnight guest.

First, and most importantly, the undisputed facts do not suggest that Penn intended to stay the night in the motel room. Penn's counsel conceded at the second suppression hearing that Penn did not check in with Casteel and arrived several hours later. Penn stated that his purpose in coming to the room was to "turn up, smoke, and chill"[1] and to examine a firearm he was considering purchasing. (Doc. 72, at 4.) Penn did not tell police he was staying in the room, and his stated purposes do not suggest that he considered the room his home for the night or that the registered guests considered him their overnight guest. And, as in *Berryhill*, Penn had no items with him suggesting an overnight stay. 352 F.3d at 317. Penn notes that the "[o]fficers never determined who had spent the night in the room" (Doc. 76, at 9), but the burden is on Penn to demonstrate that he was an overnight guest, not on the Government to show that he was not. *See Noble*, 762 F.3d at 526. Several of the officers' observations suggest that Penn may have slept in the room, including the lack of movement in or out of the room while officers were observing it, and Penn's state of undress and the unmade bed at approximately 9:00 am when the officers entered. But even assuming that Penn slept in the motel room for some amount of time, that

---

[1] Penn objects to Magistrate Judge Steger's conclusion that Penn's reference to smoking referred to smoking marijuana. (Doc. 76, at 8 n. 4.) Because the substance Penn intended to smoke has no bearing on the Court's ruling, it need not address this objection.

7

would not establish that he was an overnight guest of the motel's registered guests such that he had a reasonable expectation of privacy in the motel room, given the rest of the circumstances.

Additionally, although the facts in *Berryhill* differ somewhat, the *Berryhill* court's second reason further undermines Penn's argument that he has standing to challenge the search of the motel room. Just as the defendant in *Berryhill* "unreasonably relied upon a guest's invitation to enter the apartment given without the direct or indirect knowledge of the lawful tenant or owner[,]" 352 F.3d at 316–17, Penn unreasonably relied upon a registered guest's consent to visit the motel room, given in violation of the motel's policies and without its permission or knowledge. The motel room was registered to Trevor Casteel, who rented it for one night at about 2:00 am on January 29, 2017. (Doc. 71, at 63.) Like the apartment guest in *Berryhill*, Casteel had no authority to invite guests or visitors into his room. The motel had a no-visitor policy and required an identification card from any local guests staying in their rooms. (*Id.* at 82.) Penn was not listed as a guest on the hotel's check-in sheet, and he did not present his identification card to the front desk. (*Id.*; *see also* Def. Ex. 6 (check-in sheet).)[2] Penn cites to *United States v. Caldwell*, 518 F.3d 426 (6th Cir. 2008), in which the co-occupant of a room who lacked a room key nonetheless had authority to consent to officers' search when she had registered as a guest at the hotel at the same time as the other guest, her luggage and personal belongings were in the room, and she was staying for the night. *Id.* at 429–30. However, Penn was not a guest of the motel itself, and he has cited no authority for the proposition that a motel guest's guest, whose very presence in a motel room violates the motel's policy, nonetheless has a

---

[2] Although Casteel paid for two adults when he checked in, the identity of the second adult is not listed on the check-in sheet. (Def. Ex. 6.) According to Officer Whittenburg's testimony, Casteel stated he had checked in with his girlfriend (Doc. 71, at 66). However, the Court notes that testimony is likely hearsay and will not rely upon it.

reasonable expectation of privacy there.  Although Penn may have exhibited a subjective expectation that the room would remain free from intrusion, he had no right to exclude others from the room and had taken no precautions to ensure his privacy in the room.  These facts undermine his argument that, because he may have slept in the room, he had an expectation of privacy that society is prepared to recognize as reasonable.  *See Waller*, 426 F.3d at 843; *cf. Lanier*, 636 F.3d at 231–33 (a paying guest lacked an objectively reasonable expectation of privacy after checkout time because he did not have permission from the hotel to extend his stay).

In sum, any subjective expectation of privacy Penn had in the motel room was not objectively "'justifiable' under the circumstances."  *Smith*, 442 U.S. at 740 (quoting *Katz*, 389 U.S. at 353.  Therefore, he lacks standing to challenge the officers' warrantless search of that room.  The Court agrees with Magistrate Judge Steger's application of the law, and Penn's arguments do nothing to undermine his well-reasoned conclusion on this issue.  The Court will **OVERRULE** Penn's first objection to the report and recommendation.  The Court will **ACCEPT AND ADOPT IN PART** the report and recommendation (Doc. 72) as it relates to Penn's lack of standing and **DENY** Penn's motion to suppress (Doc. 55) on this basis.  Because Penn does not have standing to challenge the officers' searches pursuant to the Fourth Amendment, it is unnecessary to resolve Penn's other objections to the report and recommendation.

## IV. CONCLUSION

For the reasons stated herein, Penn's first objection to the report and recommendation (Doc. 76) is **OVERRULED**.  The Court **ACCEPTS** and **ADOPTS IN PART** the report and recommendation (Doc. 72), to the extent it denies Penn's motion to suppress because he lacks

9

standing to challenge the search of the room. Accordingly, the Court **DENIES** Penn's motion to suppress (Doc. 55). The following new trial schedule is **ORDERED**:

1. Plea Bargaining shall be concluded by **November 4, 2019**, and any written agreement shall be executed by said date.

2. All motions shall be filed no later than **November 4, 2019**.

3. All requests for jury instructions shall be submitted no later than **November 18, 2019**. The parties shall confer and submit a joint proposal for jury instructions. Before submitting the joint proposal to the Court, the parties must attempt to resolve any disagreements. To the extent there are disagreements as to specific instructions that cannot be resolved, the parties should provide competing instructions in their joint proposal. All jury instructions in the joint proposal, including agreed instructions and competing instructions, shall be supported by citations of authority. A copy of the proposed jury instructions should be sent in Microsoft Word format to **mcdonough_chambers@tned.uscourts.gov**.

4. A final pretrial conference shall be held before the United States District Judge at **3:00 p.m.** on **November 18, 2019**, in Chattanooga, Tennessee. At or before the final pretrial conference, all parties shall provide a notebook to the Court with exhibits they expect to offer during their cases-in-chief. Each party should also file a written submission advising the Court: (1) how and by whom each document will be authenticated, and (2) the theory of admissibility for the document, with appropriate references to the Federal Rules of Evidence. At the final pretrial conference, the parties should also be prepared to advise the Court whether they intend to offer any out-of-court statements as evidence beyond what is reflected in the exhibit notebook and be prepared to explain why each statement is not barred by the rule against hearsay, the Confrontation Clause, or any other basis. The parties should also be prepared to discuss

evidence relating to a crime, wrong, or other act by the defendant(s), whether that evidence is admissible under Federal Rule of Evidence 404(b)(2), and whether the Government has given appropriate notice. The parties shall also disclose to one another and to the Court the technology they intend to use in the courtroom during the trial and how they intend to use it (e.g., display equipment, data storage, retrieval, or presentation devices). This disclosure shall list: (1) the equipment the parties intend to bring into the courtroom to use and (2) the equipment supplied by the Court the parties intend to use. Further, the parties shall disclose to one another the content of their electronic or digital materials by the time of the final pretrial conference and shall confirm the compatibility/viability of their planned use of technology with the Court's equipment by the final pretrial conference. General information regarding equipment supplied by the Court is available on the Eastern District of Tennessee website (**www.tned.uscourts.gov**). Specific questions about Court-supplied equipment should be directed to the courtroom deputy (directory available on website).

5. The trial of this case will be held before the United States District Judge and a twelve-person jury beginning on **November 25, 2019, at 9:00 a.m.** in Chattanooga, Tennessee. If this case is not heard immediately, it will be held in line until the following day or any time during the week of the scheduled trial date.

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**